IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

FILED

1:10 pm, 3/3/26

HJ Esterholdt
Clerk of Court

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| JACOB MILNE | ) | Chapter 7 |
| | ) | Case No. 25-20303 |
| Debtor. | ) | |

**CORRECTED ORDER GRANTING RELIEF FROM STAY**

This matter is before the court on the Motion for Relief from Stay filed by the State of Wyoming and the Objection thereto. The court held a preliminary hearing on the matter, at which time the parties agreed to a briefing schedule. The court has reviewed all pleadings in this matter and is prepared to rule.

Prior to Jacob Milne filing his bankruptcy case, the State of Wyoming, through the Office of the Attorney General, filed a Complaint against certain Defendants, including Debtor Jacob Milne, a/k/a Jake, for violations of Wyoming's Environmental Quality Act (EQA) relating to the disposal of wind turbines. The State of Wyoming seeks authority to continue its lawsuit and seeks relief from the automatic stay to continue. Imposing civil penalties to enforce environmental regulations is a police power promoting the State's public interest in protecting the environment and is excepted from the automatic stay under 11 U.S.C. § 362(b)(4). Thus, no relief from stay is necessary.

**Background**

On or about April 2, 2024, the State of Wyoming filed a Complaint against certain Defendants, including Debtor, in the District Court, First Judicial District, Laramie County, Wyoming, Docket No. 2024-CV-0202253.[1] Specifically, in the Complaint, the State of Wyoming seeks injunctive relief and civil penalties against Debtor for violating the Wyoming Environmental Quality Act.[2]

The State Court entered an Entry of Default against Debtor.[3] Following this, the entry of default was set aside, but the state court ultimately reinstated the entry of default against Mr. Milne.[4] The State's request for default judgment was set to be heard on November 10th, 2025, but before the hearing, Debtor filed his petition for Chapter 7 Bankruptcy protection. The State Court vacated the default judgment hearing and stayed the state court proceedings against Debtor.

---

[1] ECF No. 36-1, p. 1.
[2] *Id.* at ¶¶ 3, 4, 13, 26, 27, 38, 39, Request for Relief ¶ A.
[3] ECF No. 36-2.
[4] ECF Nos. 36-3 - 36-4.

The State then filed a Motion for Relief from the Automatic Stay in this court, seeking permission "to pursue establishment of a judgment against Debtor Jacob Milne a/k/a Jake Milne in a pending environmental enforcement action in state district court."[5] Therein, the State asserts the penalties sought in the lawsuit are not compensation for pecuniary loss, so the debt would be nondischargeable as part of Debtor's bankruptcy case under Section 523(a)(7). The State asks this court to allow the State Court to adjudicate the penalty claims because Debtor has already failed to answer.

Debtor timely opposed the State's motion, and this court set a preliminary and evidentiary hearing. At the preliminary hearing, the court inquired into the parties' positions as to Section 362(b)(4), and the parties agreed to a briefing schedule to address the potential effect of Section 362(b)(4) on the automatic stay with respect to the State of Wyoming's claims.

**Discussion**

Section 362(a)(1) of the Bankruptcy Code provides an automatic stay prohibiting the "commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before [the filing of the bankruptcy]."[6] However, Section 362(b)(4) permits governmental units to commence or continue actions to enforce their police or regulatory powers, including actions to prevent or stop violations of laws related to environmental protection, safety, or similar public policy concerns. This exception does not extend to actions pursued solely to advance a pecuniary interest or to adjudicate private rights. Section 362(b)(4).

> [E]xcepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory power. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, *environmental protection*, safety, or similar police or regulatory laws, or *attempting to fix damages for violation of such a law*, the action or proceeding is not stayed under the automatic stay. . . . [T]he exception extends to permit an injunction and enforcement of an injunction, *and to permit the entry of a money judgment*, but does not extend to permit enforcement of a money judgment.[7]

The governmental unit asserting the exception under Section 362(b)(4) bears the burden of demonstrating its action is intended to enforce its police or regulatory power and is not primarily for pecuniary purposes. Courts apply two related, and somewhat overlapping, tests to determine whether an action qualifies under the police and regulatory exception: the "pecuniary purpose" test and the "public policy" test.[8]

---

[5] ECF No. 21, p. 1.
[6] *Clouse v. Arch Ins. Co.*, No. 18-CV-037-SWS, 2018 WL 8619644, at *2 (D. Wyo. May 15, 2018) (alterations in original) (quoting 11 U.S.C. § 362(a)(1)).
[7] *In re Commerce Oil Co.*, 847 F.2d 291, 295 (6th Cir. 1988) (emphasis in original) (quoting S. Rep. No. 95-989, 95th Cong., 2d Sess. 52 (1978); H.R. Rep. No. 95-595, 95th Cong., 1st Sess. at 343 (1977)).
[8] *In re Yellow Cab Co-op. Ass'n*, 132 F.3d 591, 597 (10th Cir. 1997).

> Under the "pecuniary purpose" test, the court asks whether the government's proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property and not to matters of public policy. If it is evident that a governmental action is primarily for the purpose of protecting a pecuniary interest, then the action should not be excepted from the stay. In contrast, the "public policy" test distinguishes between government proceedings aimed at effectuating public policy and those aimed at adjudicating private rights. Under this second test, actions taken for the purpose of advancing private rights are not excepted from the stay.[9]

"[S]atisfaction of the public policy test renders it unnecessary to determine whether the action also satisfies the pecuniary interest test."[10]

Obtaining injunctive relief to prevent statutory violations, suspend a license, and impose civil penalties for statutory violations, "vindicate the state's public interest by protecting the public, punishing the wrongdoer, and deterring future violations."[11] A State's claims to obtain personal remedies for those aggrieved by violations of the statutes, "such as money damages, rescission, and restitution, primarily advance private interests."[12]

<u>Violation of Environmental Laws</u>

Courts generally find that enforcement of environmental laws falls within the Section 362(b)(4) exception. An action to enforce a state's regulatory power under the Clean Water Act, "is the classic regulatory enforcement action contemplated by § 362(b)(4)."[13] Courts explain the exception discourages environmental pollution: "The public's safety, health and welfare would be placed in jeopardy by eliminating the practical deterrent of the fine."[14] Section 362(b)(4) prevents "endangerment of the public that would result from permitting a bankrupt to avoid statutes and regulations enacted in furtherance of governmental police powers."[15] [T]he proposed commencement of enforcement proceedings . . . as a remedy for the Debtor's alleged breach of the environmental laws of that state is presumptively an exercise of its police and regulatory powers pursuant to 11 U.S.C. § 362(b)(4) which is excepted from the automatic stay."[16]

---

[9] *Id.* (citing *Eddleman v. U.S. Dep't of Labor,* 923 F.2d 782 (10th Cir. 1991)).
[10] *In re Markham*, No. ADV 24-01045, 2025 WL 2374880, at *8 (B.A.P. 10th Cir. Aug. 15, 2025).
[11] *In re JSS of Albuquerque, LLC*, No. 11-17-10092 JA, 2017 WL 3575654, at *6 (Bankr. D.N.M. Aug. 10, 2017).
[12] *Id.*
[13] *United States v. Standard Metals Corp.*, 49 B.R. 623, 624 (D. Colo. 1985) (citing *United States v. Energy Int'l, Inc.,* 19 B.R. 1020 (S.D. Ohio 1981) (explaining where Department of the Interior sought a civil penalty for violations of the Surface Mining Control and Reclamation Act, the action was excepted from the automatic stay provision as an action to enforce regulatory powers of the United States)).
[14] *Id.* at 625.
[15] *Id.*
[16] *In re Kaiser Steel Corp.*, 87 B.R. 662, 666–67 (Bankr. D. Colo. 1988); *see also In re Lenz Oil Serv., Inc.*, 65 B.R. 292, 294 (Bankr. N.D. Ill. 1986) (finding the State of Illinois' environmental enforcement action against a chapter 7 corporate debtor fell within the police power exception).

Civil Penalties

For purposes of the case before this court, Debtor argues there is no issue as to whether the State of Wyoming is attempting to stop a violation of environmental protection or similar police or regulatory laws because the alleged violations for which the State of Wyoming seeks penalties have ceased; thus, according to Debtor, this case is only about monetary relief. The State responds that Debtor is engaged in wind turbine disposal through other entities, and therefore deterrence from future violations is necessary.

However, neither party's assertion is controlling as courts recognize penalties/fines pursuant to environmental statutes serve as important mechanisms to deter future violations and accordingly fall within the police/regulatory power exception.[17] "[T]he government's ability to seek civil penalties to punish those companies that violate the CAA is one of the primary regulatory enforcement tools Congress included in the legislation and falls squarely within the ordinary meaning of 'police and regulatory power.' "[18] "The deterrent effect of civil penalties is not directed at one particular facility but to the operating company as a whole and all other companies whose operations are covered by the [Clean Air Act]."[19] "[A] request for civil penalties as part of an enforcement action for violation of . . . statutes primarily protects the public, rather than serving the State's pecuniary interests, and is not subject to the automatic stay."[20] Even in *Penn Terra Ltd. v. Dep't of Env't Res., Commonwealth of Pa.*, a case upon which Debtor relies, the court found "the assessment and *collection* of a civil penalty to serve as a punishment and deterrence against future violations would be no less an exercise of the police power than if the State had ordered the company to cease operations entirely."[21]

The State's Complaint and Motion

Debtor argues the State of Wyoming has failed to identify and provide sufficient information regarding the monetary penalties sought against Debtor to satisfy either the "pecuniary purpose" test

---

[17] *See, e.g.*, *United States v. LTV Steel Co.*, 269 B.R. 576, 583 & n.9, 585 (W.D. Pa. 2001) ("The deterrent effect of civil penalties is not directed at one particular facility but to the operating company as a whole and all other companies whose operations are covered by the [Clean Air Act].").

[18] *Id.* at 582.

[19] *Id.*

[20] *In re JSS of Albuquerque, LLC*, No. 11-17-10092 JA, 2017 WL 3575654, at *8 (Bankr. D.N.M. Aug. 10, 2017) (citing *In re Commonwealth Cos., Inc.,* 913 F.2d 518, 524-25 (8th Cir. 1990) (explaining that " '[i]t is generally the case that the government regulates private conduct by establishing penalties for certain violations of rules it prescribes. This does not mean that when it seeks to enforce the regulatory scheme in question, it is merely seeking to protect some 'pecuniary interest ...' "))*; see also In re Kadlec*, 661 B.R. 253, 259 (Bankr. D.N.M. 2024) ("Civil penalties serve to punish past violations and are primarily for protection of the public. . . . This is so even though the state would be the incidental beneficiary of any civil penalties awarded and collected.") (internal citations omitted).

[21] *Penn Terra Ltd. v. Dep't of Env't Res., Commonwealth. of Pa.*, 733 F.2d 267, 274 (3d Cir. 1984) (emphasis in original).

or the "public policy" test. According to Debtor, the Complaint filed by the State of Wyoming against Debtor, and others, merely alleges Debtor, and others, "are subject to penalties under the Act";[22] "[Debtors] acts and omissions warrant imposition of monetary penalties under the Act."[23] The Request for Relief contained in the Complaint seeks "Imposition of monetary penalties against each Defendant as described above, and/or as otherwise provided by the Act".[24]

Debtor further argues the Motion for Relief from Stay provides no further insight into the nature of the penalties the State seeks, merely stating, in conclusionary language, "People of the State of Wyoming seek to recover a civil penalty payable to and for the benefit of a governmental unit which is not compensation for actual pecuniary loss. See Exhibit A, Complaint, ¶ 3."[25] Similarly, he argues the State's Memorandum addressing the applicability of Section 362(b)(4) simply contains general conclusory statements from case law that penalties and fines fall within the police/regulatory exception without reference to any specific penalties or fines being sought against Debtor and how those specific fines and penalties fall within the police/regulatory exception. Thus, due to the lack of information provided by the State as to the nature of the penalties sought against Debtor, it is impossible to determine whether the penalties are primarily to protect public safety and welfare or to recover property or funds for the State, so it has failed to establish that the 362(b) exceptions apply to the State's court action.

Both the Complaint and Motion reference the penalty statutes at issue, Wyo. Stat. Ann. § 35-11-901(a) and 901(c). The Complaint specifically alleges Defendants were,

> grinding wind turbine blades outside of the building at the Facility, in express violation of the permit terms, and that the fiberglass particles from the grinding process were not being controlled, thereby allowing fiberglass and other particles to leave the Facility property onto neighboring properties and into an irrigation ditch which discharges into waters of the State of Wyoming.[26]

The Complaint further alleges such conduct violated the terms of the Defendants' permit, the Departments rules and regulations, and the Wyoming Environmental Quality Act warranting penalties under Wyo. Stat. Ann. 35-11-901. Wyoming Statute 35-11-901(a) provides:

> (a) Any person who violates, or any director, officer or agent of a corporate permittee who willfully and knowingly authorizes, orders or carries out the violation of any provision of this act, or any rule, regulation, standard or permit adopted hereunder or who violates any determination or order of the council pursuant to this act or any rule, regulation, standard, permit, license or variance is subject to a penalty not to exceed ten thousand dollars ($10,000.00) for each violation for each day during

---

[22] Complaint, ¶ 13. ECF No. 36-1, p. 3.
[23] ECF No. 36-1, pp. 5, 7, ¶¶ 27, 38-9.
[24] ECF No. 36-1, p. 7.
[25] ECF No. 21, p. 2, ¶ 4.
[26] ECF No. 36-1 p. 5, ¶ 24. Additional permit violations are alleged.

5

> which violation continues, a temporary or permanent injunction, or both a penalty and an injunction. . . .

Section 903(a) allows additional penalties:

> (a) Any person who violates this act, or any rule or regulation promulgated thereunder, and thereby causes the death of fish, aquatic life or game or bird life is, in addition to other penalties provided by this act, liable to pay to the state, an additional sum for the reasonable value of the fish, aquatic life, game or bird life destroyed. Any monies so recovered shall be placed in the game and fish fund.

While the pleadings do not specify the terms of the statute, they are readily identifiable. The penalties under Section 901 and 903 are different—the first assessing a daily penalty and the second compensating the State for damage to wildlife.

### Public Policy and Pecuniary Purpose Tests

The State argues its state court action against Debtor satisfies both the pecuniary interest and the public policy test as one of the primary purposes of the EQA is to protect "public health and welfare" by "enabl[ing] the state to prevent, reduce and eliminate pollution[.]"[27] To fulfill this purpose, the EQA provides the State authority to commence actions to seek civil penalties and injunctive relief for violating the EQA.[28] The State further asserts it seeks to impose penalties for violating the EQA to protect "the health and safety of the public and livestock within the area of the facility."[29] Therefore, the State is not advancing a pecuniary interest nor attempting to adjudicate private rights, but are instead effectuating public policy.[30]

The penalties under Section 901 have no compensatory basis and act as a deterrent for violating environmental laws. There is no private right associated with these penalties and their purpose is to further the public welfare. This satisfies both the pecuniary and public policy test.

The penalties under Section 903 resemble restitution but are payable to the State. The court agrees the basis for these penalties are not well pled as the State's Complaint does not identify actual damage to wildlife. Restitution, however, may also effectuate public policy. "Because of this public policy component, it can be argued that 'hybrid' government actions like restitution come within the police power exception."[31] When the government action becomes hybrid, it still passes the public

---

[27] *See* Wyo. Stat. Ann. § 35-11-102.
[28] *See* Wyo. Stat. Ann. §§ 35-11-901(a) and -903(c).
[29] ECF No. 39 (quoting ECF No. 21-2, Complaint, ¶¶ 22, 24, 25–27, 36–37).
[30] *See United States v. Standard Metals Corp.*, 49 B.R. 623, 625 (D. Colo. 1985) ("If one in precarious financial condition knows that any action to assess a fine will be stayed by filing for bankruptcy, he will have little incentive to guard against environmental pollution. The public's safety, health and welfare would be placed in jeopardy by eliminating the practical deterrent of the fine in those circumstances.").
[31] *In re NM Solar Grp., Inc.*, No. 23-10728, 2024 WL 1773424, at *5 (Bankr. D.N.M. Apr. 24, 2024) (citing *In re Energy Guard Midwest LLC*, 595 B.R. 588, 593-94 (Bankr. D. Kan. 2018) (finding Kansas's restitution claim under the state consumer protection statute is not stayed); *In re Berry*, 2019 WL 3992719, at *3 (Bankr. S.D.

policy test if the public policy component predominates.[32] Restitution benefits the public welfare "by penalizing past unlawful conduct and deterring future wrongdoing. There is no showing that the restitution claims primarily advance the governments' pecuniary interests."[33] More specifically, the Sixth Circuit found seeking penalties to remediate damage to the environment and administration costs are exercises of the state's regulatory power to effectuate public policy and is not an action related to the state's property interests.[34]

It bears repeating that the legislative history of Section 362(b)(4) applies to situations in which a governmental entity is using its police power "to prevent or stop violation of fraud, environmental protection, consumer protection, safety or similar police or regulatory laws, or attempting to fix damages for violation of such a law.[35] Similar to the penalties under Section 901, the penalties under Section 903 do not adjudicate private rights. They are not an aid to collect property for third parties. Wyoming's EQA identifies is policy and purpose in statute:

> Whereas pollution of the air, water and land of this state will imperil public health and welfare, create public or private nuisances, be harmful to wildlife, fish and aquatic life, and impair domestic, agricultural, industrial, recreational and other beneficial uses; it is hereby declared to be the policy and purpose of this act to enable the state to prevent, reduce and eliminate pollution; to preserve, and enhance the air, water and reclaim the land of Wyoming; to plan the development, use, reclamation, preservation and enhancement of the air, land and water resources of the state; to preserve and exercise the primary responsibilities and rights of the state of Wyoming;

---

Fla.) (holding restitution count fell within the state's police and regulatory powers); *In re Nelson*, 240 B.R. 802, 806 (Bankr. D. Me. 1999) (same); *In re Guardia*, 522 B.R. 734, 736 (Bankr. S.D. Fla. 2014) (same); and *In re First Alliance Mortg. Co.*, 263 B.R. 99, 110 (B.A.P. 9th Cir. 2001) (same)).

[32] *In re NM Solar Grp., Inc.*, 2024 WL 1773424, at *5 (citing *Eddleman v. U.S. Dep't. of Labor*, 923 F.2d 782, 791 (10th Cir. 1991) (finding liquidating back-pay claims to individuals to primarily prevent unfair competition in the market was not adjudicating private right but effectuating public policy)); *see also In re Markham*, No. ADV 24-01045, 2025 WL 2374880, at *7 (B.A.P. 10th Cir. Aug. 15, 2025) ("when a proceeding or law serves dual purposes (public policy and pecuniary interests/private rights), courts must determine the primary purpose of the proceeding or the law being enforced to decide whether the § 362(b)(4) exception applies.").

[33] *City & Cnty. of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1125 (9th Cir. 2006) (finding the restitution claim "fits comfortably within section 362(b)(4)'s 'police or regulatory power.' ").

[34] *In re Commerce Oil Co.*, 847 F.2d 291, 296 (6th Cir. 1988) (holding "the Tennessee Water Quality Control Board's proceedings to fix civil liability under the Tennessee Water Quality Control Act of 1977 are within the § 362(b)(4) exception to the automatic stay."); s*ee also In re Nelson*, 240 B.R. 802, 806 (Bankr. D. Me. 1999) ("A proceeding which seeks restitution is not deprived of the applicability of exceptions to the automatic stay merely because restitution bears a direct relationship to actual pecuniary losses."); *California ex rel. Brown v. Villalobos,* 453 B.R. 404, 413 (D. Nev. 2011) ("Disgorgement, civil penalties, and restitution all satisfy a public purpose and the seeking thereof does not convert the action into one that fails the pecuniary purpose test."); *In re Universal Life Church, Inc.*, 128 F.3d 1294, 1299 (9th Cir. 1997), *as amended on denial of reh'g* (Dec. 30, 1997) ("Indeed, most government actions which fall under this exemption have some pecuniary component. . . . This does not abrogate their police power function. Only if the action is pursued '*solely* to advance a pecuniary interest of the governmental unit' will the automatic stay bar it.") (citation omitted.)

[35] H.R. Rep. 95-595, 343, 1978 U.S.C.C.A.N. 5963, 6299.

> to retain for the state the control over its air, land and water and to secure cooperation between agencies of the state, agencies of other states, interstate agencies, and the federal government in carrying out these objectives.[36]

While any penalties may compensate the State for loss, the penalties are primarily for the purpose of enforcing public policy to protect the environment – objectives squarely within the parameters identified in both the legislative history of Section 362(b)(4) and the purpose of Wyoming's EQA.

### Money Judgment

Debtor also argues the State is impermissibly trying to enforce a money judgment directing this court to the Third Circuit Court of Appeals where it analyzed, in depth, the language of Section 362(b)(4) in *Penn Terra, Ltd. v. Dep't of Environmental Resources.*[37] The Court noted:

> [T]he legislative history explicitly notes, the mere *entry* of a money judgment by a governmental unit is not affected by the automatic stay, provided of course that such proceedings are related to that government's police or regulatory powers.
>
> Quite separate from the entry of a money judgment, however, is a proceeding to *enforce* that money judgment. The paradigm for such a proceeding is when, having obtained a judgment for a sum certain, a plaintiff attempts to seize the defendant's property to satisfy that judgment. It is this seizure of a defendant-debtor's property, to satisfy the judgment obtained by a plaintiff-creditor, which is proscribed by subsection 362(b)(5).[38]

It is also important to note that not every order requiring the expenditure of money qualifies as a "money judgment."[39] For example, regulatory actions seeking injunctions or fixing fines and penalties for violations of regulatory statutes are not considered money judgments if they do not involve enforcement actions to collect monetary sums.[40] Courts construe the "money judgment" exception to the police power exception under Section 362(b)(4) to preserve the bankruptcy court's control over the debtor's estate while allowing governmental units to exercise their regulatory powers to the extent permitted by the statute.[41]

The State admits in its brief it is not and cannot seek to enforce a money judgment, it is just seeking entry of the money judgment through fixing civil penalties for environmental violations, which Section 362(b)(4) does allow.[42]

---

[36] Wyo. Stat. Ann. § 35-11-102.

[37] 733 F.2d 267 (3d Cir. 1984).

[38] *Id.* at 272 (emphasis in original).

[39] *In re Lenz Oil Serv., Inc.*, 65 B.R. 292, 294 (Bankr. N.D. Ill. 1986).

[40] *Id.*; *see also In re Kaiser Steel Corp.*, 87 B.R. 662, 666 (Bankr. D. Colo. 1988) ("Further, since no judgments of any kind have been entered in favor of Utah, it is difficult to conceive how any proposed action Utah might take would constitute the "enforcement of" a "money judgment.").

[41] *In re Samost*, No. 23-19257-ABA, 2024 WL 1422667, at *3 (Bankr. D.N.J. Apr. 2, 2024) (recognizing a post-petition requirement to pay for repairs was enforcement of a money judgment).

[42] *See, e.g., LTV Steel Co.*, 269 B.R. 576, 582 (W.D. Pa. 2001) ("The government's power to seek *entry* of a civil penalty judgment for violations of the environmental laws is not precluded. Indeed, the government's ability

The State is not seeking to enforce a money judgment. The purpose of its State Court Action is to determine to what extent Debtor violated the EQA and to enter/fix penalties for any such violations. Any enforcement action the State undertakes to recover against Debtor's assets must be done through the mechanisms the Bankruptcy Code provides to creditors.

**Conclusion**

The State is acting to guard an important public interest—protecting the environment. This falls squarely within the purview of Section 362(b)(4) and is excepted from the stay. The State may proceed with its State Action for the purpose of liquidating its claim but may not enforce any resulting money judgment outside the confines of the Bankruptcy Code.

IT IS THEREFORE ORDERED that the Motion for Relief From Stay filed by the State of Wyoming is granted.

BY THE COURT

_/s/ Cathleen D. Parker_  3/3/2026
Honorable Cathleen D. Parker
United States Bankruptcy Court
District of Wyoming

---

to seek civil penalties to punish those companies that violate the CAA . . . falls squarely within the ordinary meaning of 'police and regulatory power.'" (emphasis in original) (citation omitted)); *see also Commerce Oil Co.*, 847 F.2d at 295–96 (holding the State's attempt to fix civil liability was "a regulatory action in the purest sense"); *In re Mystic Tank Lines Corp.*, 544 F.3d 524, 527 (3d Cir. 2008) ("[A]n action by a governmental unit attempting to fix damages for violation of . . . an environmental law is not stayed under the automatic stay. . . . [T]he police power exception permits 'the entry of a money judgment, but does not extend to permit enforcement of a money judgment.'" (quoting *Nicolet, Inc.*, 857 F.2d 202, 208 (3d Cir. 1988))).